[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]

# Exhibit A

[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]

COOLEY LLP
MICHAEL G. RHODES (State Bar No. 116127)
(rhodesmg@cooley.com)
JOHN W. CRITTENDEN (State Bar No. 101634)
(jcrittenden@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

COOLEY LLP
PETER J. WILLSEY (*pro hac vice*)
(pwillsey@cooley.com)
BRENDAN J. HUGHES (*pro hac vice*)
(bhughes@cooley.com)
1299 Pennsylvania Ave., NW, Suite 700
Washington, DC  20004
Telephone:     (202) 842-7800
Facsimile:     (202) 842-7899

Attorneys for Plaintiffs
JACKSON FAMILY WINES, INC. and
LC TM HOLDINGS LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKSON FAMILY WINES, INC. and LC TM HOLDINGS, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>DIAGEO NORTH AMERICA, INC. and DIAGEO CHATEAU & ESTATE WINES CO.,<br><br>    Defendants. | Case No. CV-11-5639 (EMC) (JSC)<br><br>**JOINT STATEMENT REGARDING PLAINTIFFS' REQUEST FOR LEAVE TO CONDUCT 30(b)(6) DEPOSITION REGARDING DOCUMENT PRESERVATION, COLLECTION, AND PRODUCTION EFFORTS**<br><br>**MAGISTRATE JUDGE CORLEY** |

1  Plaintiffs Jackson Family Wines, Inc. and LC TM Holdings, LLC ("Plaintiffs") and Defendants Diageo North America, Inc. and Diageo Chateau & Estate Wines Co. (together "Defendants" or "Diageo") submit this joint statement regarding Plaintiffs' request for leave to conduct a 30(b)(6) deposition on Defendants' document preservation, collection, and production efforts. Counsel have met in-person and conferred in good faith, but have been unable to resolve this dispute.

**Plaintiffs' Contentions**

Newly discovered facts indicate that Defendants either failed to produce relevant evidence or never preserved and collected it. Accordingly, Plaintiffs respectfully request leave to depose a 30(b)(6) witness regarding Defendants' document preservation, collection, and production efforts.

**Custodial Records of Jennifer Josephson**

Ms. Jennifer Josephson served as Defendants' ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ during the time period when Defendants selected the CRÈME DE LYS mark for their new wine product. *Exhibit 1*, 18:17-20; 19:6-8; 21:13-16. In that role, Josephson identified ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 20:2-19. In addition, she was a key contact point for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* at 43:8-25; 44:2-10; 45:8-10; 46:5-12; 62:3-17.

On August 2, 2013, when Plaintiffs first moved to compel 30(b)(6) testimony regarding Defendants' document preservation and production, the Court found that "Ms. Josephson's importance is undisputed" and instructed the parties to "confer regarding Plaintiffs' concerns and insure that all documents are identified and produced." (Dkt. No. 77 at 4.) During subsequent meet and confers, however, Defendants failed to address Plaintiffs' concerns about the potential spoliation of relevant evidence. Specifically, Defendants refuse to answer two simple questions: (1) did Defendants properly preserve Josephson's documents; and (2) if not, on what date(s) were such documents destroyed? Instead, Diageo contends that it "*produced* all responsive materials that it located following its collection and keyword searching of Ms. Josephson's records." *Infra*, p. 6 (emphasis added). With this empty assertion, Defendants attempt to evade the preservation

issue by essentially stating that they produced all they had not destroyed.

It is generally accepted in the Ninth Circuit that "[a]s soon as a potential claim is identified," a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action. *In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) (citations omitted). "[T]here is no question that the duty to preserve relevant evidence may arise even before litigation is formally commenced," such as when a cease and desist letter is sent. *Apple, Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 990 (N.D. Cal. 2012); *see, e.g.*, *Day v. LSI Corp.*, 2012 WL 6674434, *11 (D. Ariz. Dec. 20, 2012) (finding defendant's duty to preserve arose on the date it received plaintiff's demand letter). A party's duty to preserve also includes maintaining relevant documents of former employees that exist at the time a potential claim is identified. *Realnetworks, Inc. v. DVD Copy Control Ass'n*, 264 F.R.D. 517, 528 (N.D. Cal. 2009) (finding a duty to preserve former employee's documents when the employee was terminated while party was on notice of probable litigation).

Applied here, Defendants' duty to preserve was triggered on August 31, 2011, the date when Defendants' received Plaintiffs' demand letter. *Exhibit 2*. The opening paragraph of Plaintiffs' demand letter clearly identified potential trademark infringement and dilution claims. *Id.* At that time, Defendants knew or reasonably should have known that Josephson's documents would be relevant to an action regarding the CRÈME DE LYS mark. Thus, Defendants had a duty, as of August 31, 2011, to preserve Josephson's documents. *See In re Napster*, 462 F. Supp. 2d at 1067; *Apple*, 888 F. Supp. 2d at 990; *Realnetworks*, 264 F.R.D. at 528.

Despite their duty to preserve Josephson's documents, several facts indicate that Defendants failed to do so. *First*, during her deposition, Josephson identified several sources of potentially relevant electronic documents, *Exhibit 1* at 30. Josephson confirmed that . *Id.* at 36:5–37:12. Thus, only Defendants can explain which

[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]

1  sources of Josephson's documents still exist, which sources, if any, were destroyed, and when
2  such sources were destroyed. Defendants, however, have failed to provide any specific
3  information regarding their preservation efforts.

4  *Second*, while it is impossible for Plaintiffs to ascertain the exact number of missing
5  documents, there are at least 17 relevant documents, which include 44 email exchanges and one
6  attachment, that Defendants' failed to produce. *Exhibit 3*. But for ▮▮▮▮▮ production in
7  response to a subpoena, Plaintiffs never would have seen these critical documents. For example,
8  one document reveals that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Exhibit 4*.
10  These missing documents confirm that Defendants either lost, destroyed, or failed to produce
11  relevant documents possessed by Josephson.

12  Defendants' own production also suggests there are missing documents. Defendants
13  produced only nine documents purportedly from Josephson's custodial files, although Defendants
14  refuse to disclose the actual source (*e.g.*, server or laptop) of these documents. *Exhibit 5*.
15  Defendants' remarkably low production demonstrates that Defendants preserved some documents
16  from Josephson's custodial files, but not others. Defendants also produced over 100 documents
17  that Josephson sent or received, but which Defendants collected from other custodial files.
18  *Exhibit 6*. Accordingly, if Defendants had properly preserved Josephson's documents,
19  Defendants should have produced more than nine documents from her files. Further, it is clear
20  from ▮▮▮▮▮ production and the depositions of Josephson and ▮▮▮▮▮ that Josephson had
21  correspondence with ▮▮▮▮▮ that no other Diageo custodian would possess. *Exhibit 1*, 60:13-
22  19; *Exhibit 3*; *Exhibit 7*, 53:4-7. It is unacceptable for Defendants to contend now that they are
23  somehow absolved of their discovery duties because ▮▮▮▮▮ produced some of the missing
24  documents in response to Plaintiffs' subpoena. *Infra*, p. 6.

25  *Third*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Exhibit 1*, 27:23–28:4; 29:8-14. Josephson
27  worked for Diageo ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 25:9-13.
28  Although Josephson's role changed, Defendants were obligated to preserve documents from the

1  period of time in which Josephson worked in ███████ concerning CRÈME DE LYS.

2  *Realnetworks*, 264 F.R.D. at 528. As a consultant, ████████████████████████

3  ███████████████████████████████████████████████████████████. *Id.* at 25:9-22;

4  37:13-17. Despite that fact, Defendants did not contact her to discuss her involvement in the

5  selection of the CRÈME DE LYS mark or about the location of her relevant documents.

6  Moreover, Defendants had sufficient control over her to issue a litigation hold, but never did so.

7  While Defendants characterize this motion as an attempt "to force Diageo to spend time,

8  money, and resources on an issue already resolved by the Court," Plaintiffs have no choice but to

9  seek a 30(b)(6) deposition because Josephson revealed significant inadequacies in Defendants'

10  discovery efforts. Plaintiffs should be able to explore those efforts during a 30(b)(6) deposition.

11  **Recordings of ███████████████**

12  At Defendants' direction, ██████ conducted █████████████ relating to

13  Defendants' CRÈME DE LYS mark in ████████████████████████.

14  Defendants originally represented that recordings from these ████████ did not exist.

15  Surprisingly, on September 9, 2013, well after the close of fact discovery, and just two days

16  before Josephson's deposition, Defendants produced three DVD recordings from ████████

17  ████. These DVDs contain highly relevant evidence regarding Defendants' intent in adopting

18  the CRÈME DE LYS mark, as well as the likelihood of consumer confusion created by the mark.

19  These issues strike at the heart of Plaintiffs' claims. Defendants, however, failed to produce

20  similar recordings from the ████████████████████.

21  After first misrepresenting that no recordings existed from ████████, Defendants now

22  claim that recordings exist for only the ████████ and only were possessed by ██████.

23  Further, in response to this motion, Defendants suggest that they should somehow be rewarded

24  for their "good deed" of producing DVDs from the ████████ *Infra*, p. 8.

25  The missing Josephson documents coupled with Defendants' inconsistent statements

26  regarding the ████████████ substantially justify Plaintiffs' suspicions that Defendants

27  withheld or destroyed relevant evidence. Accordingly, Plaintiffs request that the Court grant

28  Plaintiffs leave to conduct a 30(b)(6) deposition regarding Defendants' discovery efforts.

**Defendants' Contentions**

Jackson is trying to force Diageo to spend time, money, and resources on an issue already resolved by the Court in August. For the reasons set forth below, the Court should not permit Jackson to reopen fact discovery, long after its close, to conduct an unnecessary 30(b)(6) deposition on Diageo's document retention and preservation efforts.

Jackson made this *same exact motion* just a few months ago to compel a 30(b)(6) "collection and preservation" witness. This Court held an in-person argument in August 2013 (for which Diageo's counsel traveled from New York), and then squarely denied Jackson's motion. Here is what the Court held, a rationale that applies with equal force now (Dkt. 77 at 3):

> Plaintiffs' request for a Rule 30(b)(6) witness on these topics [of document production and preservation] is DENIED. Plaintiffs' request is premised on the belief that Defendants' document production is somehow incomplete or improper. However, <u>a Rule 30(b)(6) witness is not necessary to assuage Plaintiffs' concerns, which are supported merely by Plaintiffs' vague contention that something may be amiss</u>. As discussed at the hearing, the parties shall confer regarding Plaintiffs' concerns and insure that all documents are identified and produced. (Capitalization in original; underlining added.)

Once again, Jackson has presented nothing more than "vague contentions that something may be amiss." Not only that, but as discussed below, these contentions are filled with misrepresentations and downright inaccuracies. Jackson has already taken thirteen depositions in this case (including one taking place next week and a second currently being scheduled for the near future), and yet it wants more. As this Court ordered, the parties met and conferred regarding Jackson's grievances – Jackson does not allege otherwise – and Diageo ensured that responsive documents were in fact identified and produced. As the Court might imagine, it is extremely disappointing to Diageo that it is still being forced to combat this preservation issue.

Regardless, what matters most is simply that Jackson presents nothing new or remotely sufficient to cause this Court to change its mind and alter its recent decision. There remains no warrant for this "preservation" deposition and the Court should again deny Jackson's motion.

**A.   Jennifer Josephson Custodial Records**

Diageo cannot be more clear than what it previously told Jackson, namely, that Diageo

1  produced all responsive materials that it located following its collection and keyword searching of
2  Ms. Josephson's records. Jackson asserts (at 3) that "it is clear" from prior depositions that
3  Ms. Josephson had correspondence with ▅▅▅▅ that did not include any other Diageo
4  custodians, but conveniently, Jackson does not provide a single deposition cite or any other
5  evidentiary support for this purportedly "clear" assertion. In that regard, *see* this Court's
6  August 2, 2013 motion to compel decision at 4 (refusing to credit deposition testimony "not
7  attached as exhibits or otherwise in the record"; Dkt. 77).

8  Jackson also concedes that it has already received a large number of documents that
9  included Ms. Josephson. Jackson references ninety-five separate documents already produced in
10 that regard, and yet *Jackson does not cite a single instance in which an email or document was*
11 *produced that referenced another communication or document that was NOT produced.* That
12 fact standing alone indicates that Jackson has already received the entire universe of documents
13 and correspondence including Ms. Josephson (keeping in mind as well that Jackson has already
14 received productions from both Diageo *and* ▅▅▅▅ on this issue, and thus any additional
15 discovery would be unreasonably cumulative and duplicative). Again, Jackson has presented
16 nothing but unfounded speculation that something else is out there, and as this Court already held,
17 such conjecture is insufficient to merit a 30(b)(6) preservation deposition.

18 The burden of a preservation deposition based on Ms. Josephson is also unwarranted
19 because Ms. Josephson played only a specific but limited role in the background facts of this
20 litigation. Ms. Josephson acted as the conduit between Diageo's marketing team and ▅▅▅▅,
21 the third-party market research company, but other than in connection with the Crème De Lys
22 ▅▅▅▅, Jackson does not alleged that Ms. Josephson had any role *at all* in connection with
23 Crème De Lys brand development, marketing, name creation, sales, or anything else having to do
24 with Crème De Lys or any other facts at issue in this lawsuit. Jackson's assertion (at 2) that
25 Ms. Josephson played "a central role in Defendants' selection of the CRÈME DE LYS mark" is
26 absolutely untrue, and a blatant misrepresentation to get this Court to change its mind and order
27 this deposition. Jackson also implies at the very beginning of its motion (at 2) that Ms. Josephson
28 was *the* head of Diageo's consumer planning division, but that was not the case and

1  Ms. Josephson's position was not nearly so senior. *See* Exhibit 8, 31:22-32:19 (Josephson
2  testimony that she needed approval from "the head" of consumer planning to run ▮▮▮▮).

3       Jackson's remaining suspicions also do not hold water. For example, Jackson states that
4  Ms. Josephson should have received a litigation hold notice after this litigation was filed in
5  November 2011. At that time, however, Ms. Josephson had already left Diageo and, as she
6  testified at deposition, returned two months later in a completely different capacity having
7  nothing to do with either ▮▮▮▮ or the Crème De Lys product. *See id.* at 26:15-27:4.
8  Because, as Ms. Josephson testified at deposition, she no longer possessed Crème De Lys
9  materials and was not receiving any new Crème De Lys materials *(see id.)*, there was no need for
10 Ms. Josephson to be issued a litigation hold. As for the events several months earlier in August
11 2011, Ms. Josephson left Diageo that month, and Jackson did not send a cease-and-desist letter to
12 Diageo until August 31 (incidentally, more than a year after Crème De Lys initially hit the
13 market). Jackson's claim (at 2) that this timing "complicates" the preservation analysis is a futile
14 attempt to muddy the waters. The timing of Ms. Josephson's initial departure in conjunction with
15 documents is not at all suspicious, and again, insufficient to require a 30(b)(6) deposition that this
16 Court previously denied (Jackson also provides no caselaw support for the proposition that this
17 initial cease-and-desist letter triggered a labor-intensive "duty to preserve" obligation).

18     **B.** ▮▮▮▮

19     As misleading as Jackson's factual assertions are regarding Ms. Josephson, they pale in
20 comparison to Jackson's presentation of the ▮▮▮▮ issue. Jackson omits the most
21 important facts regarding these DVDs, namely, (1) there is no documentation or deposition
22 testimony *anywhere* that states (or even implies) that Diageo itself recorded the ▮▮▮▮ (via
23 DVD, audio tape, video tape, or otherwise); (2) to the extent the ▮▮▮▮ were recorded, it
24 was ▮▮▮▮ that handled the recordings, not Diageo; and (3) during the third-party deposition
25 that Jackson took of ▮▮▮▮, ▮▮▮▮ *witness expressly and unambiguously testified that*
26 ▮▮▮▮ *had looked for the* ▮▮▮▮ *and been unable to locate them. See*
27 Exhibit 9, 96:20-96:25. Considering this sworn ▮▮▮▮ testimony, Jackson's allegation (at 4)
28 that Diageo misrepresented the existence of the videotapes is unfounded and inappropriate.

Jackson's charges, however, are even more incredible considering what happened next: During the ▮▮▮▮ deposition, Jackson requested that Diageo search its records again for ▮▮▮▮ ▮▮▮▮. Diageo did *not* object. Instead, in good faith, Diageo searched its records *again* for these recordings, *again* did not find anything, and informed Jackson of that fact.

Diageo, however, went one step further: *Without Jackson even requesting it*, and despite ▮▮▮▮ prior testimony, *Diageo took it upon itself to go back to* ▮▮▮▮ and ask it to once more look for recordings. And at that point – because Diageo asked – ▮▮▮▮ located recordings from one of the groups, but told Diageo it could not locate them from the second.

Diageo told Jackson all of these facts during the parties' meet and confer, and yet, without any regard for good sense or judicial economy, Jackson submitted this motion anyway.

Diageo wants to be as clear as it possibly can be: to its knowledge, it does not possess ▮▮▮▮ from the second location. To Diageo's knowledge, it has *never* possessed ▮▮▮▮ from the second location. To Diageo's knowledge, it also *never* possessed ▮▮▮▮ from the first location. That first set of recordings came from ▮▮▮▮, after Diageo in good faith asked ▮▮▮▮ to conduct a second search. Diageo has searched its records on multiple occasions for ▮▮▮▮ and has found nothing. And, finally, there is not a shred of deposition or documentary evidence that recordings from this second location ever existed – it is sheer Jackson conjecture – the very same conjecture that this Court held is insufficient to merit a 30(b)(6) preservation deposition.

In sum, Jackson's position that it should be entitled to depose Diageo on its routine preservation efforts because of this DVD episode is absurd. Diageo is not withholding anything from Jackson. The parties would not even be here – and Jackson would not even have the DVDs from the first location – if Diageo had not asked ▮▮▮▮ to look again. Proving that no good deed goes unpunished (even in litigation), Jackson has turned around and repaid Diageo for its good faith by bringing this motion to compel. For all of the reasons set forth above, Diageo respectfully requests that this Court deny Jackson's attempt to take this unnecessary and unfounded 30(b)(6) preservation and collection deposition. Enough is enough.

Dated:  November 1, 2013

| | |
|---|---|
| */s/ Peter J. Willsey*<br>COOLEY LLP<br>PETER J. WILLSEY (*pro hac vice*)<br>BRENDAN J. HUGHES (*pro hac vice*)<br>1299 Pennsylvania Ave., NW<br>Suite 700<br>Washington, DC  20004-2400<br>Telephone:     (202) 842-7800<br>Facsimile:       (202) 842-7899<br><br>COOLEY LLP<br>MICHAEL G. RHODES (116127)<br>JOHN W. CRITTENDEN (101634)<br>101 California Street, 5th Floor<br>San Francisco, CA  94111-5800<br>Telephone:     (415) 693-2000<br>Facsimile:       (415) 693-2222<br><br>*Attorneys for Plaintiffs* | */s/ Adam D. Siegartel*<br>PROSKAUER ROSE LLP<br>BRENDAN J. O'ROURKE (*pro hac vice*)<br>ADAM D. SIEGARTEL (*pro hac vice*)<br>11 Times Square<br>New York, NY  10036<br>Telephone:     (212) 969-3000<br>Facsimile:       (212) 969-2900<br><br>PROSKAUER ROSE LLP<br>ROBERT H. HORN (134710)<br>2049 Century Park East, 32nd Floor<br>Los Angeles, CA 90067-3206<br>Telephone:     (310) 557-2900<br>Facsimile:       (310) 557-2193<br><br><br><br>*Attorneys for Defendants* |

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF electronic notification system on November 1, 2013.

>Brendan J. O'Rourke, Esq.
>Adam D. Siegartel, Esq.
>PROSKAUER ROSE LLP
>Eleven Times Square
>New York, NY 10036-8299
>borourke@proskauer.com
>asiegartel@proskauer.com
>
>Attorneys for Defendants
>DIAGEO NORTH AMERICA, INC. and
>DIAGEO CHATEAU & ESTATE WINES CO

>*/s/ Peter J. Willsey*
>PETER J. WILLSEY (*pro hac vice*)
>COOLEY LLP
>1299 Pennsylvania Ave., NW, Suite 700
>Washington, DC  20004-2400
>Telephone: (202) 842-7800
>Facsimile:  (202) 842-7899
>
>Attorney for Plaintiffs
>JACKSON FAMILY WINES, INC. and
>LC TM HOLDINGS LLC

203073 /DC