IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKSON FAMILY WINES, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DIAGEO NORTH AMERICA, INC., et al.,<br><br>Defendants. | Case No. 11-5639 EMC (JSC)<br><br>**ORDER RE: PARTIES' JOINT DISCOVER LETTER (Dkt. No. 129)** |

Now pending before the Court is the parties' joint discovery letter concerning 1) Defendants' motion to exclude retail store photos produced by Plaintiffs, and 2) Defendants' motion to exclude Plaintiffs' President, Rick Tigner, as a trial witness. After carefully considering the parties' submission, the Court concludes that oral argument is unnecessary. For the reasons stated below, the Court GRANTS the motion in regards to any retail store photo produced after the close of fact discovery. The Court further GRANTS Defendants' motion to exclude Mr. Tigner.

**DISCUSSION**

Under Rule 26(a) of the Federal Rules of Civil Procedure, parties have an affirmative duty to disclose all individuals with potentially discoverable information, as well as all documents and tangible things, that the party may use to support its claims or defenses. Fed. R. Civ. P. 26(a). Parties

also have a duty to provide supplementary disclosures when they learn additional information that should have been provided under Rule 26(a).  Fed. R. Civ. P. 26(e).  Where a party has failed to provide information or disclose a witness as required under Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Where the exclusion would not amount to dismissal of one or more of the plaintiff's claims, a court need not find that the failure to disclose was in bad faith before excluding the witness.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

In determining whether to preclude introduction of evidence pursuant to Rule 37, courts consider:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence, and (5) the nondisclosing party's explanation for [the] failure to disclose the evidence.

*S.F. Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011) ("the *Baykeeper* factors").

## A.     Retail Store Photos

Fact discovery in this case closed on July 5, 2013.  More than four months after the close of fact discovery, Plaintiffs produced 49 photos that purport to depict the parties' wines in close proximity on store shelves.  Then, on December 11, 2013, more than six months after the close of discovery, Plaintiffs produced seven more photos.  These 56 photos were in addition to three similar photographs that Plaintiffs produced a week before fact discovery closed.

Regarding the 56 late-produced photos, the *Baykeeper* factors weigh in favor of exclusion. For the first factor, Plaintiffs assert that Defendants should not be surprised by the evidence because the photographs are intended to prove overlapping channels in trade and "the Ninth Circuit's *Sleekcraft* factors explicitly identify similarities in channels of trade as a factor in determining whether consumer confusion is likely."  (Dkt. No. 129 at 5.)  Plaintiffs' argument proves too much.  If Plaintiffs' argument were to prevail, any late-produced evidence relevant to an element of a stated claim or defense would not be a surprise since the opposing party would invariably be aware of the

claim or defense. Defendants are surely not surprised that Plaintiffs seek to admit evidence purporting to support their claims; Defendants' surprise is that they had no indication prior to the close of fact discovery that Plaintiffs would produce 56 additional photos in support of their consumer confusion allegation months after the close of fact discovery.

To the extent Plaintiffs argue that the three photos produced prior to the close of fact discovery somehow put Defendants on notice that dozens of more photos would follow almost six months later, Plaintiffs' argument is rejected. Defendants are not mind readers. Nor are Defendants supposed to expect that Plaintiffs will produce additional discovery well after Court-imposed deadlines for doing so have lapsed.

Plaintiffs also appear to assert that *their* surprise as to the supposed reason underlying the need for the late-produced evidence is a relevant consideration. However, the first factor plainly provides that a court is to consider the surprise "to the party *against whom the evidence would be offered*." *S.F. Baykeeper*, 791 F. Supp. 2d at 733 (emphasis added). Moreover, that Plaintiffs apparently were not aware until expert discovery that Defendants "seriously" planned to contest a particular *Sleekcraft* factor is no one's fault but Plaintiffs' own. It is Plaintiffs' responsibility to gather the evidence required to satisfy their burden of proof on their claims of consumer confusion and produce such evidence to Defendants within the deadlines set by the Court. That Plaintiffs apparently misjudged the seriousness of their opposing party's defense—and the sufficiency of their evidence to combat that defense—is better classified as a mistake than a surprise.

The second factor also weighs in favor of excluding the late-produced photos. Trial is currently scheduled for March 3, 2014,[1] meaning that Defendants would have less than three months to depose the two authentication witnesses for the 56 photos, as well as gather their own evidence to rebut Plaintiffs' evidence that the wines are invariably shelved together. If the photos were not excluded, Defendants would essentially be required to reengage in discovery and evidence collection

---

[1] The parties note that at the Case Management Conference on December 19, 2013, Judge Chen, the presiding judge, informed the parties that there was a possibility that the trial would be delayed due to a scheduling conflict. The parties' March 3rd trial date, however, remains intact, and this Court declines to assume that the trial will be postponed. Moreover, even if the Court were to make such an assumption, the Court could only speculate as to how far in the future the trial date would be moved.

rather than prepare for a not-too-far-off trial. While Plaintiffs argue that the authentication witness depositions would be short, Plaintiffs fail to address the prejudice to Defendants in having to collect rebuttal evidence. Indeed, in attempting to justify the lengthy delay in producing the photos, Plaintiffs themselves assert that collection of this evidence "will be discovered over time—not through a one-off investigation" since the photograph collection involves travelling to numerous nationwide retail stores. (Dkt. No. 129 at 7.) Given the relatively short time before trial, and in light of the substantive discovery work that Defendants would need to pursue to rebut the late-produced evidence, the Court concludes that Defendants' ability to cure the surprise is poor.

Plaintiffs also appear to argue that Defendants are responsible for any prejudice caused by the late production because Defendants should have pursued evidence of overlapping channels of trade following the production of the three photos before the close of discovery. The Court disagrees. There is a material difference between producing three photos of store shelves with the wines in close proximity and 56 such photos. Defendants' decision to forego depositions and rebuttal evidence when faced with a mere three photos is not in conflict with its stated intent to seek such discovery now if the 56 late-produced photos are not excluded.

The third factor—the likelihood that introduction of evidence will disrupt the trial—weighs slightly against preclusion. While Plaintiffs' late production certainly prejudices Defendants, there is no indication that the late-produced evidence would necessitate moving the trial date or would otherwise disrupt the trial. Defendants make no such argument.

The fourth factor—the importance of the evidence—also weighs against preclusion. Defendants do not dispute that the photos are relevant to one of the *Sleekcraft* factors at dispute in this case. Indeed, Defendants' prejudice arises out of its need to pursue its own evidence to rebut the late-produced evidence important to Plaintiffs' case.

Finally, the fifth factor weighs strongly in favor of exclusion. Plaintiffs offer no persuasive explanation for the late production. Plaintiffs' reason for not disclosing the photos sooner is that the photos "simply did not exist." (Dkt. No. 129 at 6.) This argument ignores that the photos were nonexistent because Plaintiffs did not create them until months after the close of fact discovery. As already discussed above, while Plaintiffs may have made a mistake in their assessment of the

4

1  adequacy of their evidence as to distribution channels, it should not be a surprise to Plaintiffs that
2  Defendants plan to "seriously" contest their claims.  Plaintiffs further assert that their difficulty in
3  finding "relevant evidence" earlier was "in part" due to the low distribution of Crème de Lys, which is
4  now more frequently sold in the same stores as La Crema.  While the increased frequency of the two
5  wines appearing in the same stores surely makes discovery collection more convenient for Plaintiffs,
6  Plaintiffs' own allegations are at odds with their present contention that "frequent proximal
7  distribution" is a "relatively new occurrence."  (Dkt. No. 129 at 7; *see* Dkt. No. 1 ¶ 27 ("Defendants'
8  CRÈME DE LYS wines are offered through the same marketing and trade channels and to the same
9  target customers as Plaintiffs' LA CREMA® wines. . . . Plaintiffs and Defendants have the same
10 broker or distributor of their respective wine products in at least twenty states; thus, Plaintiffs' and
11 Defendants' wine products are even more likely to appear in the same stores and restaurants in those
12 states.").)  Finally, Plaintiffs contend that they could not conduct a "reasonably targeted investigation"
13 until Defendants produced a witness and documents regarding where Defendants distribute their wine.
14 (Dkt. No. 129 at 7.)  This contention makes no sense as 49 of the 56 late-produced photos were
15 produced towards the end of October 2013—*before* the October 30, 2013 deposition and the
16 December 9, 2013 document production.

17       Because three of the five factors favor excluding the 56 untimely photos, the Court
18 accordingly GRANTS Defendants' motion to exclude those photos.  Plaintiffs' late production was
19 not harmless and Plaintiffs offer no explanation for the delay in gathering evidence that substantially
20 justifies the late production.

21       The Court, however, DENIES Defendants' motion to the extent it seeks to exclude the three
22 retail store photos produced before the close of fact discovery, as well as the accompanying
23 authentication witnesses.  Because the photos were produced before the Court-imposed deadline,
24 Plaintiffs did not violate Rule 26.  Moreover, while Defendants make much of the photos being
25 produced only one week before the close of discovery, Defendants admit that the photos were of little
26 concern to them at the time.  (Dkt. No. 129 at 1 ("Because Jackson produced so few photos, Diageo
27 did not believe there was a need to depose witnesses about them, or to rebut them.").)
28 //

**B.     Witness Rick Tigner**

On October 17, 2013, four months after the close of fact discovery, Plaintiffs identified Jackson's President, Rick Tigner, as a fact witness on numerous issues, including the parties, their products, distribution, advertising, consumers, and past discussions between the parties concerning Defendants' acquisition of the La Crema brand. (*See* Dkt. No. 129-3 at 2.) Plaintiffs seek to substitute Mr. Tigner for Jeff Ngo, a Jackson employee who is currently designated to testify on "the most crucial of these topics," and who Defendants already deposed. (Dkt. No. 129 at 8.)

The *Baykeeper* factors also support excluding Mr. Tigner as a witness. Plaintiffs do not dispute that the designation of Mr. Tigner as a fact witness on a host of topics after the close of discovery is a surprise to Defendants. Plaintiffs do contend, however, that this surprise is not prejudicial to Defendants because they have offered Mr. Tigner for a deposition and will review and produce any responsive documents possessed by Mr. Tigner "as soon as possible." (Dkt. No. 129 at 8.) The Court disagrees. It is plainly prejudicial to compel Defendants to review Mr. Tigner's documents and depose him on a slew of topics at this late stage in the litigation—especially after Defendants have already conducted such discovery with respect to the witness Mr. Tigner would be replacing, Mr. Ngo. Further, Plaintiffs ignore that substituting Mr. Tigner as a witness will likely require Defendants to engage in further discovery to rebut his testimony. Defendants' ability to cure the surprise is poor.

The Court rejects Plaintiffs' attempt to pin any resulting prejudice on Defendants' alleged delay in bringing the present dispute to the Court. Plaintiffs identified Mr. Tigner as a fact witness on October 17, and the parties met and conferred on the resulting dispute on November 7. Defendants then provided their version of the discovery letter on December 9, which Plaintiffs returned on December 20. Defendants filed the letter the next business day. That Defendants waited a month to begin the exchange of the joint letter does not mean that "Diageo [] has created the prejudice from which it now seeks relief." (Dkt. No. 129 at 8.)

The Court also questions the importance of Mr. Tigner's testimony in this case given Plaintiffs complete failure to identify *their own company president*—who has been President since this litigation commenced in 2011—as the person most knowledgeable to testify on an array of topics

central to this case. If Mr. Tigner's testimony were so essential to Plaintiffs' case, Mr. Tigner would have presumably been designated months ago, well before the close of discovery. However "natural" of a witness Mr. Tigner may be to Plaintiffs, their strategic decision to not designate him as a witness, and designate Mr. Ngo instead, is not one that can be reversed at this late stage in the case. (Dkt. No. 129 at 8.)

Similarly, Plaintiffs' explanation for failing to designate Mr. Tigner earlier is insufficient to justify the delay. It appears that despite Mr. Tigner being a "natural witness," Plaintiffs have "been trying to identify a more senior Jackson employee" than Mr. Ngo, and this process took some time. (*Id.*) Whether Plaintiffs overlooked their own president or belatedly decided that Mr. Tigner was a better witness than Mr. Ngo, Plaintiffs' explanation does not justify the substantial delay and resulting prejudice in now designating Mr. Tigner as a witness. Plaintiffs' reliance on *S.F. Baykeeper* for the proposition that "identifying witnesses willing to subject themselves to the rigor of litigation takes time," is inapposite as the witnesses at issue in that case were members of a non-profit organization whose testimony was provided to establish organizational standing. 791 F. Supp. 2d at 732-34. Mr. Tigner—as Plaintiffs' President and a trial witness on a dozen meritorious issues—is a far cry from the organizational members who provided declarations to support S.F. Baykeeper's standing allegations.

Because the *Baykeeper* factors weigh strongly against allowing Plaintiffs to introduce Mr. Tigner as a witness, the Court GRANTS Defendants' motion to exclude Mr. Tigner's testimony.

## CONCLUSION

For the foregoing reasons, Defendants' motion to exclude the 56 late-produced retail store photos is GRANTED. To the extent Defendants seek to exclude the three photos produced before the close of discovery, Defendants' motion is DENIED. Further, Defendants' motion to exclude Mr. Tigner as a witness is GRANTED.

**IT IS SO ORDERED.**

Dated: January 9, 2014

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE